IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT MORRIS, | ) |
| Plaintiff, | ) |
| | ) Case No. 24 CV 1431 |
| v. | ) |
| | ) Judge Joan H. Lefkow |
| THE CITY OF CHICAGO, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Robert Morris brings this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et. seq.*, the Illinois Health Care Right of Conscience Act, 745 Ill. Comp. Stat. 70/1 *et. Seq.*, and Illinois common law. Morris alleges that his employer, the City of Chicago (the "City"), discriminated against him by refusing to accommodate his religious beliefs in enforcing its COVID-19 vaccination policy. The City moves to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] For the reasons stated herein, the court grants the City's motion in part and denies it in part.

**BACKGROUND**[2]

Morris works as a firefighter for the City of Chicago. He is also a "devout Catholic Deacon." (Dkt. 1 ¶¶ 11, 26.) In August 2021, the City "implemented a COVID-19 vaccination policy that required employees to be vaccinated" unless they qualified for an exemption. (*Id.* ¶¶

---

[1] The court has federal-question jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3). Venue is proper under 28 U.S.C. § 1391(b).

[2] The court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Taha* v. *Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (applying standard to Rule 12(b)(6) motion); *Ctr. for Dermatology & Skin Cancer, Ltd.* v. *Burwell*, 770 F.3d 586, 588 (7th Cir. 2014) (same as to Rule 12(b)(1) motion).

22, 27.) On October 13, 2021, Morris filed a religious-accommodation exemption request in which he detailed his religious beliefs and addressed all questions posed on the City's exemption form. Specifically, he asserted that the manufacturers of COVID vaccines use fetal cells from aborted fetuses in their production.[3] Morris did not provide the signature of a spiritual advisor, as required by the form, as he deemed it "unnecessary and illegal … to require such validation of his beliefs." (*Id.* ¶ 28.) The City responded by "insisting on a spiritual advisor's signature" and "demand[ing] answers to the questions" Morris had "already addressed" in his initial request.[4] (*Id.* ¶ 29.)

The City also asked Morris for a "medication follow-up" form. (*Id.* ¶ 32.) The follow-up form set out a list of "common medicines," including Tylenol, Pepto Bismol, Benadryl, ibuprofen, and aspirin, that "fall into the same category as the COVID-19 vaccine in their use of fetal cell lines." (Dkt. 1-2 at 6.) It then provided:

> By signing this form, I truthfully acknowledge and affirm that my sincerely held religious belief is consistent and true and that I do not use, nor will I use, any of the medications listed above as examples or any other medication (prescription, vaccine, or over the counter medication) that has used fetal cell lines in their testing, research, and/or development. I also truthfully affirm that, if my request for religious exemption is approved, I will abide by the vaccine accommodation requirements (twice-weekly testing, social distancing, masking). I understand that my failure to abide by the accommodation requirements will subject me to disciplinary action, up to and including termination. …

---

[3] "[A] court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint ..." *Williamson* v. *Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The exhibits attached to Morris's complaint are appropriately considered "based on [Morris's] own reliance on these documents and in the absence of any indication from [him] … that the documents are not genuine or that they have been falsified in some way." *Id.*

[4] The City's request form asked, "When did you begin practicing this religion or following these beliefs?" and "Do your religious beliefs include objections to other vaccines or medications?" (*See* Dkt. 1-2 at 8.) Morris's request did include information in response to both questions.

Morris retained legal representation to challenge the City's requirements and, after making attempts to rebut the City's position, filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") in December 2021. On January 26, 2022, Morris submitted the required follow-up paperwork "under duress." (*Id.* ¶ 38.) His exemption request was approved the next day.

In October 2022, Morris received a notice recommending his suspension. Represented by a union attorney, Morris responded to the charges and contested the rationale supporting his suspension.[5] Morris was suspended for nine days.

On November 20, 2023, Morris received notice of his right to sue under Title VII. He initiated this suit on February 20, 2024. The vaccination policy is no longer in place. The City moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[6]

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the court's subject-matter jurisdiction. The plaintiff "bears the burden of demonstrating that the district court has subject-matter jurisdiction over [the] case[.]" *Thornley* v. *Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021). If the court determines that it lacks subject-matter jurisdiction, then "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A motion under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. The complaint "must contain

---

[5] Morris does not allege the stated basis of the suspension, but his memorandum suggests that it concerned his acting as a spiritual advisor in signing religious exemption forms for other Fire Department employees.

[6] On August 26, 2024, the court granted the City's motion to dismiss without prejudice due to Morris's failure to respond. Morris did not file an amended complaint by the ordered deadline, so the court converted the dismissal to one with prejudice. Morris filed a motion for reconsideration on September 18, 2024, which the court denied for failure to demonstrate diligence. On October 21, 2024, Morris filed another motion to reopen the case. After a hearing, the court granted the motion.

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In short, the allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ANALYSIS

### I. Standing

The City first argues that Morris's claim must be dismissed for lack of standing under Article III of the Constitution. Article III limits federal courts' jurisdiction to "cases" and "controversies." *Ciarpaglini* v. *Norwood*, 817 F.3d 541, 544 (7th Cir. 2016) (citation omitted). "To establish standing under Article III of the Constitution, a plaintiff must show (1) an 'injury in fact,' (2) that the challenged conduct caused the injury, and (3) some likelihood that a decision in his favor will remedy the injury." *Speech First, Inc.* v. *Killeen*, 968 F.3d 628, 638 (7th Cir. 2020) (citing *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 157–58 (2014)). "An injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized,' and '(b) actual or imminent, not conjectural or hypothetical.'" *Lukaszczyk* v. *Cook Cnty.*, 47 F.4th 587, 597 (7th Cir. 2022) (quoting *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Morris bears the burden of establishing Article III standing. *Id.* at 596.

Morris contends that he has standing because he was required to sign the follow-up form, which "changed [his] employment terms." (Dkt. 24 at 6.) Morris asserts that the follow-up form "imposed unreasonable restrictions on medications essential to his duties as a first responder,

4

including aspirin, Tylenol, ibuprofen, Claritin, and Benadryl." (*Id.* at 4.)[7] He argues that several such medications "were developed decades before fetal cell lines were used in research" and that his faith "does not consider these medications morally objectionable." (*Id.*) Therefore, "by compelling him to abstain, the City not only misinterprets Catholic teaching but also infringes upon [Morris's] religious rights." (*Id.*)

The City responds that Morris has not suffered an injury in fact because it granted him a religious exemption to the COVID-19 vaccine. In support, the City primarily relies on *Klaassen* v. *Trs. of Indiana Univ.*, 7 F.4th 592 (7th Cir. 2021), and a district court interpreting its holding. *See Campbell* v. *Edward-Elmhurst Health*, No. 23-CV-02799, 2024 WL 5247932 (N.D. Ill. Dec. 30, 2024). In *Klaassen*, the Seventh Circuit explained that plaintiffs who qualified for Indiana University's religious exemption for the COVID-19 vaccination did not establish a justiciable controversy. 7 F.4th at 593.[8]

Courts in this district have referenced *Klaassen* for the broader proposition that qualifying for a religious exemption to a vaccine requirement divests plaintiffs of standing. *See, e.g.*, *Perez* v. *City of Chicago*, No. 1:24-CV-03077, 2025 WL 1191079, at *3 (N.D. Ill. Apr. 24, 2025) (stating that under *Klaassen*, "persons who received an exemption to a vaccination mandate lack standing to challenge that mandate in federal court"); *Campbell*, 2024 WL 5247932, at *3 ("Plaintiff's attempts to demonstrate standing run up against *Klaassen v. Trustees*

---

[7] Morris makes such contentions for the first time in his briefing. While it is "axiomatic … that a plaintiff may not amend his complaint in his response brief," *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust* v. *Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011), a plaintiff may "allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved ... would entitle him to judgment." *Early* v. *Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992). Morris's contentions in his response brief appropriately expand on the ways in which the follow-up form "switched the terms and condition of his employment" (dkt. 1 ¶ 41) and how the City "forced [him] to … either take [the] vaccine or risk losing his livelihood." (*Id.* ¶ 58.)

[8] The court reiterated this conclusion in a subsequent opinion. *Klaassen* v. *Trs. of Ind. Univ.*, 24 F.4th 638, 639 (7th Cir. 2022).

5

of Indiana University*, where the Seventh Circuit held that those who, as did Plaintiff, receive a religious exemption to a vaccine mandate lack standing to challenge that mandate in federal court."); *see also Sanchez* v. *City of Chicago*, No. 24 C 1322, 2025 WL 1042821, at *3 (N.D. Ill. Apr. 7, 2025) (holding that plaintiff could not have challenged the City's vaccination policy under *Klaassen* had he received an exemption).

*Klaassen*, however, expressly relied on the limited strings attached to the exemption at issue: the student-plaintiffs "just need[ed] to wear masks and be tested, requirements that are not constitutionally problematic." 7 F.4th at 593. Unlike in *Klaassen*, Morris has alleged requirements for receiving the exemption that raise constitutional problems. The form sets out a list of various over-the-counter medications, including Benadryl, Claritin, Tylenol, Pepto Bismol, ibuprofen, and aspirin, that it asserts used fetal cells in "testing, research, and/or development." (Dkt. 1-2 at 6.) It then requires the signatory to "affirm" that "I do not use, nor will I use, any of the medications listed above" and to acknowledge "that providing false or misleading information in support of [the] request for religious exemption … may result in disciplinary action, up to and including termination, under the City's Personnel Rules." (*Id.*)

Despite Morris's position that using such medications remained consistent with his faith, the City required him to sign the follow-up form. In so doing, the City "effectively forced [him] to choose between abstaining from the use of these medications … and maintaining status as an observant Catholic to remain in good standing as employee and not be deemed a religious fraud." *Baumgartner* v. *City of Chicago*, 759 F. Supp. 3d 868, 876 (N.D. Ill. 2024). Morris's allegations are thus sufficient to allege an injury in fact. *See id.* (concluding that the City's follow-up form constituted an adverse employment action under Title VII).

The court next considers whether Morris has standing to bring his claims for prospective relief. The City argues that, since its COVID-19 policy is no longer in place, "there is no future threat of injury, the issues presented are not 'live,' and his claims are moot." (Dkt. 12 at 4.) Indeed, Morris alleges that "[t]he original arbitrary and discriminatory policy is no longer in place." (Dkt. 1 ¶ 22.)

As set out in *Murphy* v. *Hunt*, 455 U.S. 478, 482 (1982), a case is not moot if "there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." (internal quotation and citation omitted). The plaintiff must show a "reasonable expectation" or a "demonstrated probability" that the same controversy will recur involving the same complaining party." *Id.* (quoting *Weinstein* v. *Bradford*, 423 U.S. 147, 149 (1975) (per curiam)). Since "the City has not renounced the enforceability" of the follow-up form, "the threat that violating it (i.e., by taking one of the restricted medications) could impact [Morris's] employment status ensures the suit remains ripe for adjudication." *Baumgartner*, 759 F. Supp. 3d at 875. Although the claim could be readily mooted by the cancellation of Morris's follow-up form, as alleged, this has not occurred. Morris therefore maintains Article III standing for prospective relief. Because there is subject matter jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3), the court denies the City's Rule 12(b)(1) motion.

## II.  Title VII (Count I)

The court turns to the City's Rule 12(b)(6) motion, which first seeks dismissal of Morris's Title VII claim.[9] "The Seventh Circuit has made clear that the pleading standard under

---

[9] Morris makes two conclusional references to a "hostile work environment" in his Amended Complaint, including once in the opening paragraph. (Dkt. 1 at 1, ¶ 10.) The City contends that Morris fails to raise "a single allegation demonstrating harassment." (Dkt. 12 at 8.) Morris does not respond and has therefore waived any claim of hostile work environment harassment under Title VII. *Schaefer* v. *Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Title VII is a low bar." *Baumgartner*, 759 F. Supp. 3d at 875 (citing *E.E.O.C.* v. *Concentra Health Servs., Inc.*, 496 F.3d 773, 780 (7th Cir. 2007)). To state a claim for religious discrimination based on failure to accommodate under Title VII, Morris must show: "(1) the observance, practice, or belief conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance, practice, or belief to the employer's attention; and (3) the religious observance, practice, or belief was the basis for the employee's discriminatory treatment." *Passarella* v. *Aspirus, Inc.*, 108 F.4th 1005, 1009 (7th Cir. 2024); *see also Porter* v. *City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012).

The City first argues that Morris "fails … to connect how his alleged stance is related to the COVID-19 vaccine or to being a Christian [or] Catholic." (Dkt. 26 at 5.) "At the pleading stage, an employee seeking an accommodation in the form of an exemption from an employer's vaccine mandate must allege facts plausibly permitting an inference that some 'aspect[ ]' of the request is based on the employee's 'religious observance and practice' or 'belief.'" *Passarella*, 108 F.4th at 1009 (quoting 42 U.S.C. § 2000e(j)).

Morris alleges that an employment requirement, receiving the COVID-19 vaccine conflicts with his religious beliefs: Catholic "commandments and teachings." (Dkt. 1 ¶¶ 22–23, 26, 53.) Morris expands on his religious objection in his six-page "Accommodation Request," attached to the Amended Complaint, which sets out his position in more detail. (Dkt. 1-2 at 9–14.) Morris explains, citing the *Catechism of the Catholic Church* and Pope John Paul II's *Evangelium Vitae*, among other resources, that the Catholic Church "has consistently regarded abortion as a moral evil" and inconsistent with the use of fetal cell lines in producing vaccines. (Dkt. 1-2 at 11–12.)[10] This sufficiently connects Morris's exemption request to his religious

---

[10] The City appears to suggest that Morris, for the first time in his briefing, draws a "clear distinction" between medications "developed through the use of fetal cells" (dkt. 24 at 18) and those that only used fetal cells "in

8

beliefs. *Passarella*, 108 F.4th at 1009 (concluding that plaintiffs' exemption requests to COVID-19 vaccination were "religious in nature within the meaning of Title VII" because the "exemption requests are based on their face and at least in part on a dimension of the plaintiffs' religious beliefs").

Morris also adequately pleads the second element of his claim, as he called his religious objection to the City's attention by completing a religious exemption request. Finally, Morris alleges an adverse employment decision based on his Catholic faith. The City required him to complete the follow-up form to receive the religious exemption and the form prohibited medications that are "essential to [Morris's] duties as a first responder." (*Id.* ¶ 32, dkt. 24 at 4.) If Morris "violates the form, presumably by taking one of the medications, [he] 'may be subject to discipline, up to [and] including termination.'" *Baumgartner*, 759 F. Supp. 3d at 876; Dkt. 1-2 at 5. In other words, the City "changed the terms of [Morris's] employment when he requested a religious exemption*.*" *Baumgartner*, 759 F. Supp. 3d at 876. The court therefore denies the City's motion to dismiss Count I.

### III. Illinois Health Care Right of Conscience Act (Count II)

In Count II, Morris alleges a claim under the Illinois Health Care Right of Conscience Act ("IHCRCA"), 745 Ill. Comp. Stat. 70/1 *et. seq*, which protects Illinoisans' rights to decline health care services "contrary to [their] conscience." *Troogstad* v. *City of Chicago*, 571 F. Supp. 3d 901, 918 (N.D. Ill. 2021), *aff'd sub nom. Lukaszczyk*, 47 F.4th 587 (quoting 745 Ill. Comp. Stat. 70/2). Section 13.5 of the IHCRCA provides an exception, however, for measures related to preventing COVID-19: "It is not a violation of this Act … to take any measures or impose any requirements … intended to prevent contraction or transmission of COVID-19 …." 745 Ill.

---

research" (*id.* at 4), such that it is inconsistent with this more general objection. (*See* Dkt. 26 at 3 n.2.) The court rejects this characterization and finds the reasoning in both documents sufficiently consistent.

Comp. Stat. 70/13.5. The City contends that Section 13.5 bars Morris's claim, citing in part *Carrero* v. *City of Chicago*, No. 23-CV-00650, 2024 WL 22099, at *7 (N.D. Ill. Jan. 2, 2024) (dismissing IHCRCA claim challenging City's COVID-19 vaccine policy pursuant to Section 13.5).

Morris offers no counter to the City's arguments and fails to mention the IHCRCA at all in his response. He has therefore waived the claim. *Schaefer*, 839 F.3d at 607. The court dismisses Count II with prejudice.

IV. **IIED and NIED Claims (Counts III and IV)**

The City argues that Morris's claims of intentional infliction of emotional distress and negligent infliction of emotional distress are preempted by the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/1-101, *et seq.*, and the Illinois Workers' Compensation Act, 820 Ill. Comp. Stat. 305/1, *et seq*. The City also argues, in the alternative, that Morris fails to state a claim for either tort. Morris offers no substantive response to the City's arguments and has therefore waived the claims. *Schaefer*, 839 F.3d at 607. The court dismisses Counts III and IV with prejudice.

V. **First Amendment**

At the outset, the City argues that Morris "does not assert a separate count or claim under the First Amendment" and therefore fails to assert a viable claim (Dkt. 12 at 12.) While not explicitly stated, the City appears to invoke Federal Rule of Civil Procedure 10(b), which provides that "each claim founded on a separate transaction or occurrence … must be stated in a separate count or defense" "[i]f doing so would promote clarity." A court may dismiss, *sua sponte*, a portion of a complaint that does not comply with Rule 10(b), "particularly when the complaint does not provide the defendant with adequate notice of the claims it must defend."

10

*Williams* v. *Chicago Transit Auth.*, No. 16 C 9072, 2017 WL 4467456, at *5 (N.D. Ill. Sept. 30, 2017).

Morris has not pleaded a First Amendment claim as a separate count and offers vague theories regarding speech on behalf of himself and other employees.[11] In his Amended Complaint, Morris alleges that the City retaliated against him "[i]n direct violation of [his] First Amendment [r]ights" following Morris's "compl[iance] with the medical attestation form which switched the terms and condition of his employment." (Dkt. 1 ¶¶ 41–44.) Morris later alleges, however, that he "helped *others* … [and] signed the religious exemption form[s] of *other employees*." (*Id.* ¶ 54) (emphasis added). He pleads that the City "retaliated against his right to organize" pursuant to the First Amendment and "violated his free speech in retaliation to Morris'[s] leadership." (*Id.* ¶ 55.) Morris appears to opt for the latter theory in his response, adding new facts about the temporal proximity between signing an exemption on behalf of "the final [Chicago Fire Department] member on unpaid leave" and Morris's suspension. (Dkt. 24 at 16–17.)

The City represents that it is uncertain as to whether this theory serves as the basis for Morris's First Amendment retaliation claim and contends that it was never referenced in the Amended Complaint. (Dkt. 26 at 9 n.6) ("It is unclear from Plaintiff's response, but he may be asserting that he signed exemption request forms on behalf of other CFD employees in his capacity as a Deacon, and he is now contending that these other requests triggered retaliation. If so, such allegations do not appear in the Complaint and should be disregarded.") (cleaned up).

---

[11] While Morris does not identify 42 U.S.C. § 1983 as a cause of action anywhere in his Amended Complaint, this oversight is not fatal. *See Robinson-Miller* v. *Montgomery Cnty. Bd. of Educ.*, No. 2:18-CV-512-JTA, 2022 WL 13701300, at *17 & n.18 (M.D. Ala. Oct. 21, 2022) (construing constitutional claim under 42 U.S.C. § 1983 despite plaintiff's failure to plead the specific statutory mechanism).

Though the theory is briefly referenced in the pleading, it does not arise from Morris's negotiations with the City for his own religious accommodation—the basis of his Title VII claim.[12] Rather, it originates from his efforts on behalf of other City employees. These allegations amount to a different "transaction or occurrence" under Rule 10(b). *See Pratt* v. *Illinois Dep't of Corr.*, No. 06-CV-847-JPG, 2007 WL 1320626, at *3 (S.D. Ill. May 3, 2007) (ordering amendment of complaint pursuant to Rule 10(b) where "the specific acts of discrimination and retaliation of which [plaintiffs] complain take different forms").

Moreover, Morris has not provided the City "with adequate notice of the claims it must defend." *Williams*, 2017 WL 4467456, at *5 (citation omitted). The City did not brief the merits of Morris's "right to organize" theory, nor has Morris supported it with any citation to legal authority. (Dkt. 1 ¶ 55.) The court therefore dismisses his First Amendment retaliation claim under Rule 10(b). Because Morris has offered some substantive factual explanation in support of his retaliation claim, however, the court will permit Morris to replead with more clarity.

### VI. Illinois Tort Immunity Act

The City also contends that the Illinois Tort Immunity Act, 745 Ill. Comp. Stat. 10/2-101, *et. seq*, bars Morris's claims. The Tort Immunity Act "protect[s] local public entities and public employees from liability arising from the operation of government. It grants only immunities and defenses." 745 Ill. Comp. Stat. Ann. 10/1-101.1(a). The statute is accordingly "an affirmative defense, and a plaintiff does not have to plead around affirmative defenses." *Prokop* v. *Hileman*, 588 F. Supp. 3d 825, 844 (N.D. Ill. 2022). The court therefore "declines to dismiss based on the

---

[12] Morris "realleges all the paragraphs above for his Title VII discrimination claim" (dkt, 1 ¶ 63) but clearly articulates that his Title VII theory applies to his individual accommodation process. (*Id.* at 1) ("Defendant violated Title VII when it discriminated against Morris by refusing to accommodate his sincerely held religious belief in a timely manner and causing [Morris] damages when Defendant coerced Plaintiff into changing the terms and conditions of his employment by signing a medical attestation form ….").

Tort Immunity Act at this stage of the litigation." *Rogers* v. *Dart*, No. 24-CV-03739, 2025 WL 790740, at *5 (N.D. Ill. Mar. 12, 2025).

### VII. Punitive Damages

Finally, the City seeks to dismiss Morris's claim for punitive damages against the City. Only Count I, Morris's Title VII claim, remains and "[p]unitive damages are not available under Title VII against a municipality or government." *McKay* v. *City of Chicago*, No. 21 CV 00577, 2024 WL 3251349, at *13 (N.D. Ill. July 1, 2024) (collecting cases). Morris's claim for punitive damages is therefore stricken.

### CONCLUSION AND ORDER

For the foregoing reasons, the City's motion is granted in part and denied in part. The court denies the City's Rule 12(b)(1) motion. The City's Rule 12(b)(6) motion to dismiss is granted in part and denied in part. Count I may proceed, but the claim for punitive damages is stricken. The court dismisses Counts II, III, and IV with prejudice. Morris may replead a First Amendment claim if he can plead consistently with this opinion. Morris is given until September 3, 2025, to file an amended complaint.

Date: August 20, 2025

_____
U.S. District Judge Joan H. Lefkow

13