**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24 C 1431 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Robert Morris brings this action against the City of Chicago (the City), asserting claims

for failure to accommodate, disparate treatment religious discrimination, violations of the Free

Exercise Clause, and retaliation for engaging in protected speech under the First Amendment.

Before the court is the City's motion to dismiss Morris's amended complaint. (Dkt. 37.) For the

reasons stated below, the court grants the motion in part and denies it in part.

**BACKGROUND[1]**

In August 2021, the City implemented a COVID-19 vaccination policy that required its

employees to be vaccinated against the COVID-19 virus. Morris, a firefighter for the City and a

devout Catholic deacon, refused to take the COVID-19 vaccine due to his religious beliefs.

Morris opposes, on religious grounds, the use of vaccines derived from fetal cell lines. So, on

October 13, 2021, he submitted a religious accommodation request, seeking an exemption from

the COVID-19 vaccine requirement. His request included a multi-page explanation of his

---

[1] Unless otherwise stated, this section is drawn from Morris's complaint. For the purposes of the motion to dismiss, Morris's well-pleaded allegations are accepted as true. *See Alarm Detection Sys., Inc.* v. *Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019) (citation omitted).

religious beliefs that addressed each of the questions outlined in the City's form. He had, however, deliberately omitted from the request the signature of a spiritual advisor, since he believed that requiring such a signature was unnecessary and illegal. As a Catholic deacon, he deemed his signature to be sufficient.

The City responded to Morris's request by insisting that he supply the signature of a spiritual advisor. The City also demanded answers to the questions outlined in the City's form, which he had already addressed in his request. Morris thus sought legal representation in early November 2021, since he believed that he was facing discriminatory treatment in the exemption process. Through legal counsel, he contested various deficiencies in the City's form and reiterated that his initial accommodation request was legally sufficient.

Nevertheless, the City persisted in denying Morris's request for an exemption from the COVID-19 vaccination requirement, claiming that his accommodation request was insufficient, since it missed the signature of a spiritual advisor. The City also introduced additional requirements for Morris to seek an exemption, including a new condition that he sign a medication follow-up attestation (the Attestation Form), which required Morris to agree that he would forgo using certain medications. Individuals who sought medical exemptions were not required to sign the Attestation Form or a comparable form. Only individuals seeking a religious exemption were required to sign this form.

As a result, Morris's legal counsel began to engage in communications with the City's Equal Employment Opportunity (EEO) officer, Katie Perry Hopkins, regarding Morris's treatment. As these communications did not prove fruitful, he soon filed a discrimination charge with the City's EEO office regarding his accommodations request. This, the City dismissed

without investigation. In December 2021, he filed a discrimination and retaliation charge with the Equal Employment Opportunity Commission (EEOC).

Eventually, on January 26, 2022, Morris signed the Attestation Form, since he feared repercussions from the City if he refused to do so. One day later, the City granted his accommodations request. Throughout Morris's attempts to obtain a vaccine exemption, he only received form letters from the City, and the City failed to respond to his various inquiries into whether additional information was needed for his request.

On October 22, 2022, the City's Internal Affairs Division (IAD) informed Morris of disciplinary charges brought against him. According to the IAD, Morris was found to have engaged in "Conduct in violation of the Code of Professional Conduct" based on allegations that he had harassed, bullied, and used "coarse, profane, or insolent language" toward another person. (Dkt. 33 ¶ 95.) These allegations stemmed from an incident report made on March 7, 2019. At that time, a member of Morris's church community had filed a false charge against Morris with the IAD following a dispute within Morris's church community related to Morris's strongly held views regarding abortion. Morris had participated in an interview with the IAD regarding the reported conduct that same year. No other interviews were performed. As such, the City's 2022 findings came three-and-a-half years after the incident had been reported and Morris had been interviewed. Moreover, the City's 2022 findings included a finding that Morris's 2019 conduct violated certain City rules that were only enacted in 2020. Morris responded to the charges with the assistance of a union attorney, but the City nevertheless suspended him for nine days without pay. Pay was later restored in exchange for Morris's accepting a written reprimand, which remains on his employment records.

At the same time, the City was aware that Morris, who was vocal about his beliefs, had been assisting others both before and after he received his vaccine exemption in seeking similar vaccine exemptions, including by signing others' exemption forms as a Catholic deacon. The City was also aware that, at his parish, he had held meetings to aid other parishioners in completing vaccine exemption forms and obtaining legal counsel. And several firefighters, including Matt Miller and FNU[2] Ramos, had received assistance from Morris in obtaining COVID-19 vaccine exemptions. Management personnel knew of each of these specific efforts, and on at least one occasion a human resources official of the City remarked to Morris that, in effect, "we know who you are around here." (*Id.* ¶ 107.) In the end, the October 2022 charge brought against Morris, which was based on his alleged conduct in 2019, was introduced within seven days of Morris's providing religious accommodation assistance to Miller.

Morris timely initiated this lawsuit on February 20, 2024, after the EEOC issued a Right to Sue letter on November 20, 2023. The City soon moved to dismiss Morris's initial complaint, and on August 20, 2025, the court dismissed several of his claims with prejudice while allowing him to re-plead others. Morris then filed the operative amended complaint on September 13, 2025. The City now moves once more to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The City's vaccination policy is no longer in place.

## LEGAL STANDARD

For federal jurisdiction to be properly exercised, standing must exist. *Spokeo*, *Inc.* v. *Robins*, 578 U.S. 330, 338 (2016). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id.* (cleaned up). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the jurisdictional sufficiency of a complaint,

---

[2] First name unknown.

4

but it is otherwise "analyzed as any other motion to dismiss." *United Phosphorus, Ltd.* v. *Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc.* v. *Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). Nevertheless, "[o]nce the allegations supporting standing are questioned as a factual matter—either by a party or by the court—the plaintiff must support each controverted element of standing with competent proof, which we've understood as a showing by a preponderance of the evidence, or proof to a reasonable probability, that standing exists[.]" *Bazile* v. *Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (internal citations and quotations omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards* v. *Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (citations omitted); Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in a plaintiff's favor. *See Park* v. *Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012). But courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Cincinnati Life Ins. Co.* v. *Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual detail, accepted as true, to state a plausible claim for relief that rises above the speculative level. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).

## ANALYSIS

### I.      Standing

The City first argues that each of Morris's claims must be dismissed for lack of standing. Article III of the Constitution limits the court's jurisdiction to cases and controversies. *Satanic*

5

*Temple, Inc.* v. *Rokita*, 163 F.4th 1061, 1066 (7th Cir. 2026). To establish standing under Article III, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Pit Row, Inc.* v. *Costco Wholesale Corp.*, 101 F.4th 493, 501 (7th Cir. 2024) (quoting *Spokeo*, 578 U.S. at 338). An injury in fact is one that is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Nowlin* v. *Pritzker*, 34 F.4th 629, 633 (7th Cir. 2022) (citations and quotations omitted). Morris bears the burden of establishing Article III standing. *Lukaszczyk* v. *Cook Cnty.*, 47 F.4th 587, 596 (7th Cir. 2022).

With one exception, the City's standing challenge is based on the same arguments that the court previously rejected in its August 28, 2025 ruling. The City contends, based on *Klaassen* v. *Trustees of Indiana University*, 7 F.4th 592 (7th Cir. 2021), that Morris has failed to allege an injury in fact, since he received a vaccine exemption in the end. But as the court previously explained in its prior ruling, Morris's allegations are distinguishable from those addressed in *Klaassen*, since the City required Morris to mischaracterize his religious beliefs and state that he would refrain from using common drugs he did not object to prior to receiving his exemption.[3] These allegations raise constitutional problems not present in *Klaassen*, where the student-plaintiffs merely "need[ed] to wear masks and be tested." 7 F.4th at 593; *cf. Janus* v. *Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 893 (2018) ("When speech is compelled … damage is done."). Additionally, Morris alleges that he was eventually suspended without pay and had a reprimand placed on his employment record, which remains. These

---

[3] To liken its vaccine exemption requirements to those discussed in *Klaassen*, the City argues that the Attestation Form's requirements were not part of the City's vaccine exemption requirements, since the Determination Notice does not state them, and it "became the operative document." (Dkt. 38 at 4.) But elsewhere the City argues that application of the Attestation Form "rises and falls with the [Vaccination] Policy itself," indicating that its requirements were at least in part incorporated. (Dkt. 38 at 5.) Regardless, the City is attempting to introduce new factual allegations at the motion to dismiss stage. This is premature.

6

allegations also state an injury-in-fact. *Cf. Brooks* v. *City of Kankakee, Illinois*, 7 F.4th 649, 659 n.35 (7th Cir. 2021) (finding that a reprimand placed in an employment file constituted a concrete and particularized injury when it placed the employee at greater risk of discipline).

The only newly raised argument by the City is that the City has now rescinded its vaccine policy, including the ancillary Attestation Form that required Morris to forgo taking a range of common medications, thus mooting this issue. The City bases this argument on a declaration from Judith Marrs, which states the same. Since this is a factual challenge to standing, Morris is required to respond to the challenge with competent proof that standing exists. *Bazile*, 983 F.3d at 278 (7th Cir. 2020) (citations omitted). He has not. He merely disputes that the policy has been rescinded and argues that, regardless, the issue is not moot under the capable of repetition yet evading review doctrine. The former is inadequate to respond to the City's factual challenge and the latter, undeveloped argument fails to address the likelihood that Morris will be subject to the vaccination requirement in the future. *See Alvarez* v. *Smith*, 558 U.S. 87, 93 (2009) (citations omitted) (for the capable of repetition yet evading review doctrine to apply, plaintiffs must make a reasonable showing that they will be subjected to the alleged illegality again). Greater deference is also given to self-corrections by public officials, such as here. *Speech First, Inc.* v. *Killeen*, 968 F.3d 628, 645 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020). The court thus finds that the vaccination policy, including the Attestation Form, is no longer in effect and concludes that the capable of repetition yet evading review doctrine does not apply. As a result, Morris's claims for prospective relief based on the vaccination policy and the Attestation Form are mooted.

Since Morris's claims for injunctive and declaratory relief in Counts I and II are made on this basis, they are mooted. In contrast, Morris's Count IV claim for injunctive and declaratory

relief is based on the reprimand that remains on his employment record. The rescission of the vaccine policy does not implicate this request for prospective relief nor does it moot Morris's remaining claims for monetary damages based on his prior injuries. *See TransUnion LLC* v. *Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross."). Accordingly, the court grants the City's 12(b)(1) motion only as to Morris's claims for injunctive and declaratory relief in Counts I and II. The City's 12(b)(1) motion is otherwise denied.

## II.  Failure to Accommodate (Count I)

The court thus turns to the City's Rule 12(b)(6) motion, which first seeks dismissal of Morris's Title VII failure to accommodate claim. Under Title VII, employers are prohibited from failing to accommodate an employee's religious beliefs unless doing so would impose an undue hardship on the employer. *Kluge* v. *Brownsburg Cmty. Sch. Corp.*, 150 F.4th 792, 796 (7th Cir. 2025). To state a failure to accommodate claim under Title VII, a plaintiff must allege "(1) the practice is religious in nature and conflicts with the employer's requirements; (2) the employee notified his employer of the religious practice; and (3) the need for a religious accommodation was a motivating factor for the adverse employment decision." *Id.* at 802 (citing *Adeyeye* v. *Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013)). The burden then shifts to the employer to show that it could not have accommodated the employee's religious belief or practice without causing it undue hardship. *Id.* at 803.

The City argues that Morris's failure to accommodate claim must fail, since the City granted him his requested accommodation.[4] Morris requested an exemption from the City's vaccination requirement on October 13, 2021, based on his sincerely held religious beliefs regarding the use of vaccines derived from the use of fetal cell tissue. Morris and the City

---

[4] The City also argues that Morris has failed to allege an adverse action. (Dkt. 38 at 7.) As explained further in the analysis for Morris's disparate treatment claim, the court disagrees.

disputed the materials that needed to be provided to receive an accommodation but, nevertheless, Morris completed the forms requested by the City on January 26, 2022. The City then granted him his requested accommodation on January 27, 2022.

Distinct analytical frameworks apply to Title VII failure to accommodate claims and Title VII disparate treatment claims. *See Porter v. City of Chicago*, 700 F.3d 944, 951–955 (7th Cir. 2012). Implicit in the analysis for any failure to accommodate claim is that a plaintiff's requested accommodation was denied, since Title VII's accommodation requirements are met when an employer has offered a reasonable accommodation to an employee's religious needs, which need not be the exact accommodation requested. *Id.* at 951–52 (citations omitted). Thus, where, as here, an employee alleges that he received precisely the accommodation he requested, a failure to accommodate claim is generally foreclosed. *Cf. Mobley* v. *Allstate Ins. Co.*, 531 F.3d 539, 546 (7th Cir. 2008) ("[T]he fact that [defendant] may have failed to engage in an interactive process … is by itself insufficient to establish a failure to accommodate claim when, in the end, [plaintiff] was provided with a reasonable accommodation."). Morris alleges that "[t]he process [for obtaining his accommodation] was not interactive" and that he "endur[ed] months of stress and uncertainty regarding his employment status" prior to receiving his exemption (dkt. 33 ¶¶ 39, 46), but these allegations merely outline defects in the interactive process and do not change the simple fact that he received the vaccine exemption he sought. Accordingly, Morris's Title VII failure to accommodate claim is dismissed with prejudice.

## II. Religious Discrimination (Count II)

Next, the City argues that Morris has failed to allege a disparate treatment religious discrimination claim. Title VII, however, sets a low bar for pleading discrimination. *Cf. Mattson* v. *Caterpillar, Inc.*, 359 F.3d 885, 892 (7th Cir. 2004). Plaintiffs are not required to allege each

9

of the elements of a disparate treatment claim at the pleading stage. *Thomas* v. *JBS Green Bay, Inc.*, 120 F.4th 1335, 1337–38 (7th Cir. 2024). Instead, to state a claim for disparate treatment under Title VII, a plaintiff must merely allege that he is a member of a protected class and that he was subjected to an adverse action that was connected to his protected characteristic. *Id.*; *see also Kaminski* v. *Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). This is true whether the alleged protected characteristic is race, sex, or, as here, religion. *See, e.g.*, *Muhammad* v. *Chicago Bd. of Educ.*, No. 24-CV-10225, 2026 WL 850785, at *3 (N.D. Ill. Mar. 27, 2026). Moreover, following the Supreme Court's decision in *Muldrow* v. *City of St. Louis, Missouri*, it is clear that a relatively minor adverse action suffices for pleading a Title VII disparate treatment claim: A plaintiff need only allege "*some harm* respecting an identifiable term or condition of employment." 601 U.S. 346, 355 (2024) (emphasis added). There is no need to allege that the harm a plaintiff suffered is "serious, or substantial, or any similar adjective" for a such a claim to be well-pleaded. *Id.*

Morris has met the low threshold requirements for pleading disparate treatment and religious discrimination. The City argues that Morris has failed to allege an adverse action, but Morris alleges that as a precondition for receiving his vaccine exemption, the City required him to complete the Attestation Form, which prohibited him from taking a range of common medications or potentially face discipline. Since many of these were medications he did not have any religious opposition to, this not only changed the terms and conditions of Morris's employment but also required him to misrepresent his religious views in order to be exempt from the City's vaccination requirement. Accordingly, Morris has shown at least "some harm" for purposes of stating an adverse action. *Muldrow*, 601 U.S. at 355. Further, Morris alleges that no parallel requirement existed for individuals requesting non-religious accommodations—only

10

those, like him, who opposed the use of fetal cell lines in the development of vaccines on religious grounds. In other words, Morris alleges that the changes to the terms and conditions of his employment were made on account of his religious beliefs. Under Title VII's generous pleading standards for disparate treatment claims, this is sufficient. The City argues that Morris has failed to allege discriminatory animus on the part of the City and that he has failed to identify a similarly situated employee who was treated more favorably, but neither of these need to be alleged at the pleading stage. *See JBS Green Bay, Inc.*, 120 F.4th at 1337–38 ("[T]he time to demand evidence is the summary-judgment stage. All the complaint need do is state a grievance. Details and proofs come later."). All Morris must do is show that he suffered some harm that was connected to his protected characteristic. *Id.* He has done that. The court thus declines to dismiss Morris's Count II.

## II.     First Amendment Violation (Count III)

The City also contends that Morris has failed to allege a free exercise clause violation on the basis that he has failed to plausibly allege that the City's vaccination policy was not neutral or generally applicable. Morris argues, on the other hand, that the City's requirement that he complete and abide by the Attestation Form unconstitutionally impeded on his right to freely exercise his religion, because the form required him to misrepresent his religious beliefs and forgo taking common medications that he had no religious opposition to. The City claims that the Attestation Form served only the limited purpose of identifying whether Morris's religious beliefs were sincerely held.

"The Free Exercise Clause, at its heart, protects religious observers against unequal treatment; in other words, the government cannot in a selective manner impose burdens only on conduct motivated by religious belief." *Listecki* v. *Off. Comm. of Unsecured Creditors*, 780 F.3d

11

731, 743 (7th Cir. 2015) (citations omitted) (cleaned up). Nevertheless, incidental burdens on an individual's religious beliefs "are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton* v. *City of Philadelphia*, 593 U.S. 522, 533 (2021) (citation omitted).

No doubt, the City was entitled to make an inquiry into the sincerity of Morris's religious beliefs. *Carrero* v. *City of Chicago*, No. 23-CV-00650, 2024 WL 22099, at *4 (N.D. Ill. Jan. 2, 2024) ("[B]eliefs may not be sincerely held or religious in nature. The City is free to challenge those points in the exemption process and in this case."). The City's right to make such an inquiry, however, is not carte blanche to engage in religious purity tests. *See id.* ("[T]he City may not single out religious beliefs merely because they do not conform to the tenets of a religion as interpreted by a spiritual leader."). Any inquiries into the sincerity of an individual's religious beliefs should be performed with care, since a religious adherent need not be "scrupulous in his observance" for his beliefs to be sincere. *See Kluge* v. *Brownsburg Cmty. Sch. Corp.*, 150 F.4th 792, 811 (7th Cir. 2025) (citations and quotations omitted).

The City argues that the Attestation Form was not compulsory for individuals that were opposed to vaccination on religious grounds, since it includes permissive language regarding the form's requirements. Morris has alleged, however, that not only did his communications with the City indicate that completion of the Attestion Form was a requirement, but also that he received his vaccine exemption one day after he finally completed the Attestation Form, which was three months after he made his initial accommodation request. This timing is circumstantial evidence that it was indeed a required precondition for receiving the exemption. Morris also alleges that individuals who sought medical accommodations did not have to sign a similar form.

12

Thus, from the facts Morris has alleged, it is at least plausible that the City's Attestation Form was not a neutral or generally applicable requirement and that it imposed an unjustifiably substantial burden on Morris's free exercise of religion by subjecting him to the type of purity test that the free exercise clause protects against. Accordingly, strict scrutiny applies, *see Fulton*, 593 U.S. at 540–41, and the City was thus required to use the least restrictive means available to achieve its objectives—in this case, identifying the sincerity of an individual's religious beliefs. *Free Speech Coal., Inc.* v. *Paxton*, 606 U.S. 461, 471 (2025). Morris has adequately alleged that it did not. As such, Morris's free exercise claim may proceed, and the court declines to dismiss Count III.

## II.     First Amendment Retaliation Under Section 1983 (Count IV)

Finally, the City seeks dismissal of Morris's First Amendment retaliation claim brought under Section 1983. To state a First Amendment retaliation claim, a plaintiff must allege (1) that he engaged in constitutionally protected speech; (2) that his employer retaliated against him because of that speech; and (3) that the alleged retaliation caused him to suffer a materially adverse employment action. *Massey* v. *Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Even still, for municipal liability to accrue, a plaintiff must also allege either (1) that the municipality has a permanent and well-settled custom or practice that, although not authorized by official law or policy, was the moving force behind the plaintiff's constitutional injury; or (2) that an individual with final policy-making authority for the municipality (on the subject in question) caused the constitutional deprivation. *Monell* v. *City of New York*, 436 U.S. 658, 690–91 (1978); *Simmons* v. *Chicago Bd. Of Educ.*, 289 F.3d 488, 494 (7th Cir. 2002). In this case, the court addresses only the latter requirement for alleging municipal liability, since it is dispositive.

The basis for Morris's claim for municipal liability is that his alleged constitutional deprivation was caused by an individual with final policy-making authority for the City. In support, Morris alleges that the IAD of the Chicago Fire Department pretextually brought disciplinary charges against him in October 2022 after he began assisting other City employees with receiving vaccine exemptions based on conduct that occurred in February 2019. Morris's assistance to other City employees included a firefighter, Matt Miller, who Morris assisted less than seven days prior to the charges being issued. Morris argues, but does not allege, that the IAD and unnamed Human Resources officials possess final policy-making authority for purposes of bringing his *Monell* claim.

At the motion to dismiss stage, Morris must plead sufficient factual content to allow the court to draw the reasonable inference that the City is liable for the misconduct alleged. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). Morris alleges that the City was "infuriated" by his activism on behalf of other Catholics seeking vaccine exemptions and that the IAD introduced the charges against him in October 2022, but he has failed to allege anything more that would show that the IAD had final-policymaking authority. Nor has he alleged any facts indicating that another individual or entity at the City had final-policymaking authority and caused the alleged retaliation against him. To state a *Monell* claim, Morris must plausibly allege that an individual or entity with authority to "set[] policy for hiring and firing, not merely the act of hiring or firing itself" caused his alleged constitutional deprivation. *Kristofek* v. *Vill. of Orland Hills*, 832 F.3d 785, 799 (7th Cir. 2016); *see also Connelly* v. *Cook Cnty. Assessor's Off.*, 583 F. Supp. 3d 1142, 1149 (N.D. Ill. 2022) (dismissing Monell claim where complaint failed to allege facts indicating policy-making authority). Here, even if the court were to accept each of Morris's conclusional allegations as true, which the court is not required to do, *see Cincinnati Life Ins. Co.*, 722 F.3d at

14

946 (citation omitted), no allegation shows that any specific entity or individual had final policy-making authority to cause the alleged retaliation against Morris. As a result, Morris's *Monell* claim must be dismissed without prejudice for failure to state a claim.

**CONCLUSION AND ORDER**

For the foregoing reasons, the court grants in part and denies in part the City's motion to dismiss. (Dkt. 37.) The court dismisses with prejudice Morris's claim for failure to accommodate (Count I) and dismisses without prejudice Morris's claim for retaliation under the First Amendment (Count IV). The court also dismisses without prejudice Morris's claims for injunctive and declaratory relief from his disparate treatment religious discrimination claim (Count II). The City's motion to dismiss is otherwise denied. Morris has until July 7, 2026, to file an amended complaint that is consistent with this opinion and Federal Rule of Civil Procedure 11. If he elects not to do so, the dismissals without prejudice will be converted to dismissals with prejudice on July 8, 2026. A status hearing is set for July 15, 2026 at 9:30 a.m. in courtroom 2201.

Date: June 23, 2026

_____
U.S. District Judge Joan H. Lefkow

15